May it please the court, my name is Amy Peters and I represent Mr. David Boudreau. Mr. David Boudreau was denied the full benefits he is entitled to under the Longshore Act for two reasons. First, it was legal error to deny Mr. Boudreau a de minimis award. Second, it was legal error to fail to assess Mr. Boudreau's disability under the Longshore Longshore Act, excuse me, based on his individual loss of use pursuant to Section 8C19 and it's also an abuse of discretion not to consider his one-handedness which impacted all aspects of his disability. I'd like to start first by discussing the de minimis award denial. Mr. Boudreau has a significant likelihood of requiring a surgery that will render him economically dependent following his recovery and if he has a poor recovery it may render him completely unable. Can I stop you there and ask, go straight to my question if I could, it might help really laser in. I think you're relying on RAMBO too, yes I think you have to, right, but that case I think it first of all it seems to me it's a very narrow exception and it applies where there's a danger that otherwise an injury would not be compensated. Your circumstance it seems to me, Mr. Boudreau's circumstance I should say, is that he's being compensated pursuant to the schedule, right, for his permanent partial disability. So how can he take advantage of RAMBO 2? He can take advantage of RAMBO 2 using this court's decision in Gillis. What Gillis does is you can move between classifications of workers. So a worker who is permanent, as Mr. Boudreau is right now, can move back into temporary. And this is a necessary determination because such workers such as Mr. Boudreau, where if Mr. Boudreau is eligible to get the surgery right now, but his doctors are advising for him to wait. But that's the issue, hold on, sorry, forgive me for writing. If he's entitled to the surgery and wants to have the surgery, he has the surgery, and there's a really strong policy where we draw the line in the sand at some point and it's about a year out. And the difficulty it seems to me is your client has good reasons, I'm not second-guessing his reasons for not having the surgery, but I think your view of the case necessarily requires the employer to sort of remain exposed and not be able to close the file indefinitely. Well, Your Honor, the Longshore Act actually does contemplate that. These cases do remain open indefinitely, and it's not an unusual request. In fact, the claimants' medicals remain open indefinitely as well. And so it's not a strange thing that we're asking for here. We're just asking for workers with scheduled awards to be entitled to the same benefits that other workers are under the Rambo decision. Let me ask it this way. Is Gillis your only authority? Well, Gillis is my only authority, but you can also look at the statutory language itself. Under Section 8H, the Longshore Act specifically allows a judge to hold open an earning capacity determination as justice requires for temporary benefits, and particularly temporary partial benefits. Additionally, if you move to the definition of a disability, that loss of ability to make earnings is how Congress has defined disability. And so if we're going to change it just for these workers who have scheduled injuries, we're basically creating a class of workers contrary to all the other provisions in the Longshore Act. And can I ask you a question about your argument regarding the aggravation rule? Yes. Because the facts of this case are so unique, and I think that it's easy to have concern about the unique way this injury impacts your client. And when I look at the aggravation rule in the way that our court has articulated it back in the Portland case, it seems at first glance to fit the circumstance here that your client faces. But of course, that's not what the board determined because it was, as you know, the congenital condition did not affect or aggravate the, or vice versa, for the right arm injury. And I can't find any case where the aggravation rule has been applied in the way you would like us to apply it. Oh, there are cases where it has been applied in as broadly of a way as I'm saying it. It is, both of these cases are hearing loss cases, the Worthington and Primack decisions, but they rely on a non-hearing loss case, the O'Leary decision. And in relying on the O'Leary decision, the idea is that a worker is taken as their whole person. So I always, when I'm explaining to my clients, I talk to them about the thin-skull rule. Employers take these workers. We understand the eggshells plaintiff, so you don't have to take time. We understand that. But isn't it, what's the strongest authority for the notion that the industrial injury can aggravate a different part of the body and still take advantage of the aggravation rule? So I would actually say it's a price decision because in that particular case, they're looking at the entirety of the worker and determining if they can work. That includes things that aren't related to the injury at all, such as what kind of education do they have? Do they speak English? The act of itself is supposed to be broad. And that's why we use the broad because these workers are going to be left on their own, paying for the costs of these disabilities when that's really what workers' compensation is supposed to help them cover, at least in part. I'm looking at a case, because I was looking for this too. I agree with Judge Christian that this aggravation situation is so different because of this is his good hand, though he could 100%, they hired him because he could 100% do the work with one hand. He loses his other hand where he might have been able to do it. That is an aggravation that hasn't been taken into account. And the case that I found from the Ninth Circuit is Marine Power versus Department of Labor, where they define the aggravation rule under the act, when an already partially disabled worker suffers an employment injury, the employer is liable for the worker's total resulting disability, including any disability also caused by previous condition. Now, to me, that's right on point. I would agree, Your Honor. Is that a case that you cited? Or am I, this is the only one I could find. Your Honor, that wasn't a case that I cited, but that case, it's reliant, it relies on many cases that I do cite. Council, one of the reasons I assume you didn't cite it is because it didn't involve scheduled injuries. I'm not sure I'm using the right term there, but because it, which this case obviously squarely does. That is correct, Your Honor. So I am completely on board with the policy that you're advocating vis-a-vis the aggravation rule. But why, I mean, I don't see it in the why isn't this an argument best left to Congress for the absolute rule that you're advocating? That in the circumstance here where he could, your client could do 100%, as Judge Silver said, despite having only one of the two members, but afterward losing one, he can't do anything, losing the work in one. Why isn't that best addressed to Congress in the kind of unique circumstance we have here? Well, Congress actually left it to the judge to look at this and how they defined disability. So unlike how the defense was arguing in its briefing, where there wasn't an injury to his one arm or his lack of arm. I absolutely agree with that, but Congress doesn't define disability as an injury. It defines disability as an economic concept in section 210. And the only exception for that is for voluntary schedules and the number of weeks in particular circumstances. But I do understand your argument and I certainly see the equity of it. And I would kind of also remind the court that in 8H, Congress does allow a judge to look at, in the interest of justice, modifying things for 8E, which is temporary partial disability benefits. And so when there's certain instances like Mr. Boudreau's case, where in the interest of justice, we need to look at the broader circumstances of the statute, we can go to that 8H argument and make the adjustments. When you say we, do you mean the ALJ? I also mean this court because that is a legal argument and this court reviews legal issues de novo. In this particular instance, the ALJ did not assess that 8H issue. You mentioned when you were talking, and I have this statute in front of me, the 908 statute, you mentioned C19. Yes. And tell me what you mean about that. Because I also see C22, but I'm not sure that C22 applies, but maybe it does. But why C19? C19 talks about the actual standard that Congress wanted the courts to assess sections C1 through C20. And that is with the standard of loss of use when it's a partial disability. So it's not a full loss of use. When it's a partial loss of use, we look at C19. And that moves to the second issue in our particular case, where the judge didn't look at loss of use. Instead, he deferred to the most recent guides, the AMA-6, which uses a cookie kind of view of disability, where it says somebody who has a lateral epicondylitis, it's a zero to 2% rating unless they've had surgery. Well, in this particular case- Counselor, you're significantly over your time, so could you please wrap up? Okay. Your Honor, basically what we're asking is we're asking this court to reverse the judgment below, award a de minimis award, and remand for consideration of loss of use under section 8C1. Thank you for your argument, Counselor. We'll take this matter under advisement and go on to the next case on our calendar, please.
judges: Christen, Silver, Bennett